## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**AHMAD BECK**                                                      **CIVIL ACTION**

**VERSUS**                                                               **NO.  09-6113**

**N. BURL CAIN, WARDEN**                                  **SECTION "B"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Factual and State Procedural Background

The petitioner, Ahmad Beck ("Beck"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Beck was indicted on April 29, 2004, by a grand jury in

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Orleans Parish for the second degree murder of Shantell Davis.[3]  Beck entered a plea of not guilty at his arraignment held May 6, 2004.[4]

The record reflects that, on February 27, 2004, Detective Calvin Brazley of the New Orleans Police Department investigated a report of a burned vehicle containing a charred body.[5]  When Detective Brazley arrived on the scene, the body and the car were burned beyond recognition.  He ran the vehicle's VIN through the state computer and identified the owner as Shantell Davis.  He contacted Davis's family, and they informed him that Davis had been missing for about two days.

Through further conversations with the family and friends, the detective learned that Davis and a man named Ahmad had a child together.  On the morning of February 26, 2004, Davis took the child to Ahmad's house.  They reported that, since that time, no one had seen or heard from her.

Detective Brazley obtained Ahmad Beck's full name by running Davis's name through the police computer system's victim file.  He learned of a prior incident between Davis and Beck. Brazley was unable to locate Beck, so he contacted the media to run a news story indicating that the police were interested in questioning Beck about Davis's disappearance.

On March 2, 2004, Beck, along with his attorney and two family members, arrived at the police station to speak with Detective Brazley.  At that time, Detective Brazley arrested Beck on an unrelated municipal attachment.  Later that day, Beck confessed to killing Davis.  He told Detective Brazley that at 8:00 a.m. on the morning of February 26, 2004, Davis brought their child to his

---

[3]St. Rec. Vol. 2 of 4, Indictment, 4/29/04.

[4]St. Rec. Vol. 1 of 4, Minute Entry, 5/6/04.

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Beck*, 972 So.2d 494 (La. App. 4th Cir. 2007) (Table); St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2007-KA-0402, pp. 1-3, 12/28/07.

house.  She told him that she would return for the child at 11:00 a.m.  When Davis returned, she and Beck got into an argument that escalated into pushing and shoving.  Beck stated that Davis grabbed him by his testicles, so he grabbed her by the throat and choked her.  When she stopped moving, he shook her.  He realized that she was dead, so he placed her body on the bed.  He then left the apartment with their child.  Beck returned the child to Davis's grandfather and went back to his apartment.  He stated that he was frightened and did not know what to do with the body.  Ultimately, Beck purchased some gasoline and put Davis's body in her car.  He drove the car to the intersection of Benefit and Eads Streets, where he set the body and the car on fire with the gasoline.

The assistant coroner, Dr. Richard Tracy, determined that Davis most likely died by manual strangulation and concluded that she was already dead when her body was burned.

Prior to trial in the matter, Beck's counsel filed numerous motions including a motion to suppress the confession.[6]  After a hearing held August 6, 2004, the Trial Court denied the motion.[7]

After waiving his right to a jury trial, Beck was tried before the Trial Court on August 29, 2006.[8]  At a separate hearing held September 11, 2006, the Trial Court rendered its verdict finding Beck guilty of manslaughter.[9]  Beck waived legal delays, and the Trial Court sentenced him that day to serve 40 years at hard labor.[10]

---

[6]St. Rec. Vol. 2 of 4, Motion to Suppress the Confession, undated.

[7]St. Rec. Vol. 1 of 4, Motion Hearing Minutes, 8/6/04; St. Rec. Vol. 3 of 4, Transcript of Motion to Suppress Hearing, 8/6/04.

[8]St. Rec. Vol. 1 of 4, Trial Minutes, 8/29/06; St. Rec. Vol. 3 of 4, Trial Transcript, 8/29/06.

[9]St. Rec. Vol. 1 of 4, Verdict Minutes, 9/11/06; St. Rec. Vol. 3 of 4, Verdict and Sentencing Transcript, 9/11/06.

[10]St. Rec. Vol. 1 of 4, Sentencing Minutes, 9/11/06; St. Rec. Vol. 3 of 4, Verdict and Sentencing Transcript, 9/11/06.

On direct appeal, Beck's counsel raised two assignments of error:[11] (1) the trial court erred in admitting evidence of other crimes or bad acts without requiring the State to give notice; and (2) the Trial Court imposed an excessive sentence.  On July 12, 2007, Beck filed *pro se* a supplemental brief in which he asserted three additional assignments of error:[12] (1) his constitutional rights were violated when the confession was used against him at trial and he did not have counsel present during the interrogation; (2) the Trial Court erred in denying the motion to suppress the confession made after he invoked his right to counsel; and (3) he did not knowingly and voluntarily waive his right to counsel when he confessed to the crime.

On August 16, 2007,[13] Beck filed a second *pro se* supplemental appeal brief in which he reasserted the error claiming that the Trial Court erred in denying the motion to suppress the confession where he invoked his right to counsel and did not waive the right.[14]  He also added an additional assignment claiming police misconduct and coercion where Detective Brazley used the arrest on the municipal attachment as a ploy to pursue a confession on the murder charge.

On December 28, 2007, the Fourth Circuit Court of Appeal affirmed the conviction and sentence.[15]  The Court found that the two counsel-raised assignments were without merit.  The Court also resolved that Beck's *pro se* filed claim regarding voluntariness of his confession was without merit.  The Court did not specifically address the police misconduct or "arrest as a ploy" claim raised

---

[11]St. Rec. Vol. 3 of 4, Appeal Brief, 2007-KA-0402, 5/7/07.

[12]St. Rec. Vol. 3 of 4, Supplemental Appeal Brief, 7/12/07 (dated 7/6/07).

[13]At the direction of the Court, the State obtained confirmation from the clerk of the Louisiana Fourth Circuit that Beck's second supplemental appeal brief was in fact filed into that Court's record on August 16, 2007.  Rec. Doc. No. 11.

[14]St. Rec. Vol. 3 of 4, Second Supplemental Appeal Brief, 8/16/07 (dated 8/13/07).

[15]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2007-KA-0402, 12/28/2007.

in the second supplemental brief, although the Court found that the confession was freely given after Beck knowingly and voluntarily waived his rights.

On January 23, 2008, Beck submitted a writ application to the Louisiana Supreme Court in which he again raised all six of his prior appellate claims including police misconduct.[16]  On September 19, 2008, the Louisiana Supreme Court denied Beck's writ application without stated reasons.[17]  Beck's conviction became final 90 days later, on December 18, 2008. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    Federal Petition

On September 3, 2009, the clerk of this Court filed Beck's petition for federal habeas corpus relief, in which he raised six grounds for relief:[18] (1) the Trial Court erred when it admitted other crimes or bad acts without providing notice; (2) the Trial Court erred when it imposed an excessive sentence; (3) his constitutional rights were violated when his confession was used against him at trial and when he did not have counsel present during his custodial interrogation; (4) the Trial Court erred when it denied the motion to suppress the confession where he twice invoked his right to have counsel present at the custodial interrogation; (5) he did not knowingly and voluntarily waive his right to counsel at the hearing where he confessed to the crime; and (6) police misconduct during the arrest where there was no probable cause to arrest him on the unrelated warrant as a ploy to secure a confession to this crime.

---

[16]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 08-KO-383, 2/20/08 (dated 1/23/08, postmarked 1/24/08); St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2008-KO-383, 2/20/08 (showing postmark of 1/24/08).

[17]*State v. Beck*, 992 So.2d 952 (La. 2008); St. Rec. Vol.4 of 4, La. S. Ct. Order, 2008-KO-0383, 9/19/08.

[18]Rec. Doc. No. 1.

The State filed a response in opposition to Beck's petition arguing that his sixth claim is not exhausted and is procedurally barred from review, because he failed to raise the claim before any state court.[19]   The State further argued that the remaining five claims were without merit.

After an initial review by the Court, the undersigned determined that Beck had raised his sixth claim in a second supplemental brief submitted to the state appellate court and the Louisiana Supreme Court on direct appeal.  Upon this Court's order, the State filed a supplemental response in opposition.  The State therein conceded timeliness and exhaustion and further argued that the sixth claim was also without merit.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on August 18, 2009.[21]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court;

---

[19]Rec. Doc. No. 7.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Beck's federal habeas petition on September 3, 2009, when the filing fee was paid.  Beck dated his signature on the petition and memorandum in support on August 18, 2009.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

*i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The record demonstrates, and the State concedes, that Beck's petition was timely filed and his claims have been exhausted and none are in procedural default. The Court will proceed to address the merits of Beck's claims.

## IV.    **Standards of Review of the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting

*Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.    Other Crimes Evidence (Claim No. 1)

Beck alleges that his due process rights were violated when the state trial court, over his counsel's objections, allowed Detective Brazley to testify that he obtained Beck's full name from the police computer system when he located prior incident reports filed by Davis about him.  He complains that this was inadmissible hearsay and its admission was prejudicial to his defense.  Under a broad reading, he also claims that the State erred in failing to provide him with adequate notice of its intent to use the information so that a hearing could be conducted in accordance with *State v. Prieur*, 277 So.2d 126 (La. 1993) and other state law.

Beck's counsel raised this claim on direct appeal to the Louisiana Fourth Circuit.  The Court determined that Brazley's testimony was admitted to establish how Beck was identified.  The Court held that the testimony served a legitimate purpose, and it was admissible as part of the identification of Beck.[22]  The Court further noted that, if the State had given notice, the trial judge would have already been aware of the testimony before trial.  The Court also resolved that, even if the testimony was inadmissible, in light of his confession, the verdict was not attributable to the error.  This was the last reasoned opinion on the issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

---

[22]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2007-KA-0402, pp. 4-5, 12/28/2007.

To the extent Beck claims that the evidence was inadmissible under state law or that error occurred in failing to hold a *Prieur* hearing, his claim is not cognizable under federal habeas review. Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010); *Lampton v. Cain*, 268 Fed. Appx. 367, 368 (5th Cir. 2008) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)). States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. State of Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941)); *see Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are not cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

The question of due process in the criminal proceeding presents a mixed question of law and fact. *Dickson v. Sullivan*, 849 F.2d 403, 405-06 (9th Cir. 1988). Under the applicable standard of

review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

In *Lisenba*, the Supreme Court stated that the denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba*, 314 U.S. at 236.  In keeping with this principle, the United States Fifth Circuit Court of Appeals has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief <u>only</u> if it is "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Givens v. Cockrell*, 265 F.3d 302 (5th Cir. 2001); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

In this case, Detective Brazley's testimony was found to be admissible under Louisiana law as part of the officer's investigation and to show how Beck was identified as a person of interest.[23] The detective testified that Davis's family could not provide the last name of her male companion known to them as Ahmad.[24]  He then ran her name through the victim files on the computer system and located the name Ahmad Beck in a prior complaint she filed.[25]  He was unable to find Beck, but

---

[23]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2007-KA-0402, p. 4, 12/28/2007.  As background, in *State v. Prieur*, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is <u>generally</u> not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  *See also* La. Code Evid. art. 404(B)(1); *State v. Jackson*, 625 So.2d 146, 148 (La. 1993).  Under Louisiana law, to constitute impermissible other crimes evidence, the evidence must unambiguously implicate the defendant in another crime and not meet one of the aforementioned exceptions.  *State v. Edwards*, 406 So.2d 1331, 1349 (La. 1981); *State v. Holmes*, 841 So.2d 80 (La. App. 4th Cir. 2003).

[24]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 10-11, 8/29/06.

[25]*Id*.  Beck's counsel objected to this testimony as prejudicial and the objections were overruled.

he did speak with Beck's parents.[26]  This, together with the news broadcast, eventually led to Beck's appearance at the police station.[27]

Based on the record, Brazley's testimony provided information as to how Beck was identified and the events leading to his appearance at the police station.  Brazley never explained and was not asked the nature of the prior incident to create an air of prejudice.  Beck was tried before a judge, a factfinder not readily swayed by such information.  There is no indication in the judge's verdict or the reasons assigned therefore which would indicate that this testimony about a non-specific prior incident was a significant factor in reaching the verdict.  The Louisiana Fourth Circuit reached the same conclusion, noting the fact that Beck confessed to killing Davis during an argument.

Beck has not established that Detective Brazley's testimony was inadmissible, prejudicial or admitted in violation of the Due Process Clause.  Without some showing of this nature, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial.  *See Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993); *see also Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Beck is not entitled to relief on this claim.

**VI.**      **<u>Excessive Sentence (Claim No. 2)</u>**

Beck alleges that the 40 year sentence he received was excessive in light of his criminal record and the factors surrounding the crime.  Beck's counsel raised this claim on direct appeal.  The Louisiana Fourth Circuit found the claim to be meritless finding that the Trial Court provided reasons

---

[26]*Id*., p. 11.

[27]*Id*.

for the sentence, which were supported by the record.  The Court also found that the sentence was within the proscribed range and was similar to sentences imposed in other manslaughter cases.  This was the last reasoned opinion issued by a state court on this issue.  *Ylst*.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  *See Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

Under Louisiana law, Beck faced a sentence for manslaughter of not more than 40 years.  La. Rev. Stat. Ann. § 14:31.  His sentence was within the range provided under Louisiana law.

Louisiana law listed both second degree murder, Beck's original charge, and manslaughter as crimes of violence.[28]  *Id.*

Louisiana courts consistently imposed the maximum 40-year prison sentence in similar cases of manslaughter after ongoing violent disputes between the perpetrator and the victim, as Beck concedes he had with Davis.  *See e.g.*, *State v. Johnson*, 878 So.2d 869 (La. App. 2d Cir. 2004) (40 years after defendant convicted of lesser offense of manslaughter on second degree murder charge for killing ex-girlfriend after ongoing dispute after their breakup); *State v. Williams*, 875 So.2d 1043 (La. App. 3rd Cir. 2004) (40 years after defendant convicted of manslaughter on a second degree murder charge arising from confrontation after ongoing dispute with victim); *State v. Douglas*, 914 So.2d 608 (La. App. 2d Cir. 2005) (40 years after defendant plead guilty to manslaughter on second degree murder charge after chasing drug purchaser down for failure to pay for cocaine); *State v. Bell*, 854 So.2d 429 (La. App. 4th Cir. 2003) (40 years for manslaughter in killing of defendant's lover after a quarrel).

Nothing Beck has presented distinguishes his situation from the cases cited above in which 40-year prison sentences were imposed.  For the reasons discussed above, the state courts' finding that Beck's sentence was not excessive was not contrary to, or an unreasonable application of, Supreme Court precedent.  He is not entitled to relief on this claim.

## VII.   Improper Use of Confession without Waiver of Right to Counsel (Claim Nos. 3, 4, 5)

In his next three claims, Beck argues that he did not waive his right to counsel when he made his confession to Detective Brazley which violated *Edwards v. Arizona*, 451 U.S. 477 (1981).  He contends that he invoked his right to counsel as demonstrated by his counsel's presence at the police

---

[28]A crime of violence was defined as an offense that had, as an element, the use, attempted use, or threatened use of physical force against the person of another.  La. Rev. Stat. Ann. § 14:2(13).

station and his later efforts to reach his counsel and family.  He also argues that the detective defied

his attorney's request that Beck not be questioned about Davis's disappearance.  Beck also contends

that the state trial court erred in denying the motion to suppress based on these assertions.

Beck raised these arguments on direct appeal in his *pro se* challenge to the denial of the

motion to suppress the confession.  The Louisiana Fourth Circuit made the following findings based

on the transcript of the hearing on the motion to suppress:[29]

> At the hearing on the Motion to Suppress, Det. Brazley related that when Beck arrived at the police station with his attorney, the attorney told the detective that the police were not to question Beck concerning the victim's disappearance.  Det. Brazley said that he adhered to the attorney's instruction.  However, after the attorney left, Beck told the detective that he wanted to meet with his parents.  Det. Brazley transported Beck to his father's place of business in East New Orleans where he was allowed to speak with his family in private.  After Beck and Det. Brazley returned to the police station, Beck advised Det. Brazley that he wanted to make a statement.  The detective reminded the defendant of his attorney's instructions not to speak to the police.  Nevertheless, Beck continued to insist that he wanted to make a statement because he "was tired [of the guilt] and "just [couldn't] take it no more".  At that point, Det. Brazley read Beck his rights and asked him if he understood and wanted to waive his rights. Beck responded affirmatively.  Pursuant thereto, Beck signed the Rights of Arrestee form.
> After reviewing the transcript of Beck's statement, there is nothing to indicate that Beck did not knowingly and intelligently waive his rights.  The statement clearly indicates that Det. Brazley read Beck his rights prior to the interrogation.  Prior to questioning Beck, the detective advised him that he was under investigation for the victim's disappearance and reminded him that his attorney advised him not to make a statement.  Further, the statement shows that Det. Brazley had Beck read aloud the rights he was waiving as listed on the Rights of Arrestee form.  Det. Brazley then asked Beck whether he was coerced or threatened into making a statement.  Beck denied any coercion or threats, and stated that he was making the statement freely and voluntarily.  Det. Brazley specifically asked Beck: "And do you understand that you're waiving your rights against your counselor's advice?"  Beck answered "yes".  The detective continued: "Which mean [sic], and you still want to make a statement although your attorney told you not to?"  Again, Beck answered "yes".
> The district court did not err in allowing Beck's confession to be admitted into evidence.  A review of the record supports a finding that the confession was knowingly, intelligently, and voluntarily made.

---

[29]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2007-KA-0402, p. 8, 12/28/2007.

The Louisiana Fourth Circuit denied relief on the claim finding that the confession was knowingly, intelligently, and voluntarily made after waiver of the right to counsel and there was no error in allowing the confession to be used at trial.  This was the last reasoned state court opinion on the issue.  *Ylst*.

The voluntariness of a confession is a mixed question of law and fact.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998).  The state court's related factual determinations are presumed to be correct and are overturned only if they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U .S.C. § 2254(d)(2); *Barnes*, 160 F.3d at 222.

In *Edwards*, relied upon by Beck, the Supreme Court held that, when a suspect invokes his right to counsel, authorities must not engage in further interrogation until counsel is made available, unless the suspect initiates further communication, exchanges or conversations with the police. *Edwards*, 451 U.S. at 484-485; *Guidry v. Dretke*, 397 F.3d 306, 328 (5th Cir. 2005).  The Supreme Court has also made clear, however, the request for counsel must be such that a reasonable police officer would understand the request to be an invocation of a constitutionally guaranteed right under the circumstances in which the request is made.  *Davis v. United States*, 512 U.S. 452, 458-59 (1994); *Gribble v. Johnson*, 196 F.3d 1258 (5th Cir. 1999).

Based on the record, the statement, and the transcript from the suppression hearing, the Louisiana Fourth Circuit found as a matter of fact that, in spite of his counsel's advice, Beck chose

to initiate discussions with Detective Brazley about Davis's disappearance.  The record supports these findings.

At the suppression hearing, Brazley testified that Beck signed and understood the waiver of rights form executed prior to his statement.[30]  Brazley advised Beck of his rights several times in front of his counsel and later when Beck chose to make a statement.[31]  Prior to the taping of the confession, Brazley questioned Beck in detail about his counsel's advice to remain silent and his choice to go forward.[32]  He went through with Beck again in the taped statement.[33]  Beck clearly indicated his consent to give the statement of his own free will and that Brazley was not ignoring his attorney's request not to question Beck about Davis.[34]

Contrary to Beck's suggestions here, he confirmed in his statement that he chose to meet with his father and other family members and that no one forced him to do so.[35]  He acknowledged that he was crying during the taping of the statement and that it was not because he was being mistreated or threatened.[36]

The record therefore supports the state court's findings of fact underlying its determination that Beck intelligently, voluntarily, and knowingly waived his constitutional rights, including the right to have counsel present, before giving his inculpatory statements regarding Davis.  Beck has

---

[30]St. Rec. Vol. 3 of 4, Transcript of Motion to Suppress Hearing, pp. 2-3, 8/6/04.

[31]*Id.*, pp. 2-3, 5; St. Rec. Vol. 2 of 4, Statement, pp. 1-3, 3/2/04.

[32]*Id.*, p. 6.

[33]*Id.*; St. Rec. Vol. 2 of 4, Statement, pp. 1-3, 5, 3/2/04.

[34]St. Rec. Vol. 2 of 4, Statement, pp. 3-4, 5-6, 3/2/04.

[35]*Id.*, pp. 4-5.

[36]*Id.*, p. 5.

provided no support for his self-serving suggestions that the facts were other than those clearly appearing in the record and statement.

Brazley and the other detective participating in the discussions with Beck provided him with a recitation of the rights he was waiving and with the opportunity to follow his counsel's advice to remain and silent.  In spite of this, Beck chose to initiate conversations with the detectives in spite of his prior appearance with counsel and counsel's advice.  The detectives did not violate counsel's request nor did they ignore a request for counsel.  Instead, Beck chose to proceed with discussions after clearly waiving his right to have counsel present and with an understanding that he was ignoring counsel's prior advice.  This decision acted to avoid the *Edwards* protections from which he otherwise benefitted, and he clearly waived his rights, including the right to counsel, from that point.

Beck has not demonstrated that his confession was unconstitutionally obtained in violation of his right to counsel, or any other constitutional right.  As such, he has not shown a basis for the state court to have granted his motion to suppress, nor has he demonstrated a violation of due process as a result of the admission of the confession at his trial.

Therefore, based on the record, the state courts' denial of relief on these claims was not contrary to or an unreasonable application of *Edwards* or any other Supreme Court precedent.  Beck is not entitled to relief on these claims.

**VIII**.   **Police Misconduct to Coerce Confession (Claim No. 6)**

In his final claim, Beck alleges that Detective Brazley used the municipal attachment to arrest him as a ploy to question him about Davis.  Although this issue was raised on direct appeal, the Louisiana Fourth Circuit did not provide reasons in its opinion with regard to this claim.  The Louisiana Supreme Court also denied relief on this claim without stated reasons.

Once again, this issue challenges the voluntariness of the confession used against him at trial under the standards set forth above under *Edwards* and its progeny. For the waiver to be voluntary, the court must determine whether it was the product of intimidation, coercion, or deception and if it was made with full awareness of the accused's constitutional rights. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are also entitled to deference when supported by the record. *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997). *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness). Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

As discussed above, the record supports a finding that the waiver of counsel prior to giving his confession was knowing and voluntary. With regard to the overall waiver, Beck suggests under a broad reading that Brazley used his municipal arrest as leverage to get information from him about Davis. This he contends was a coercive and improper tactic.

The record indicates that Detective Brazley located the municipal warrant for Beck prior to Beck's voluntary arrival at the police station.[37] Only after Beck arrived was Brazley legally able to verify the warrant and arrest Beck.[38] He was able to advise Beck's counsel, who was present with

---

[37]St. Rec. Vol. 3 of 4, Transcript of Motion to Suppress Hearing, p. 8, 8/6/04.

[38]*Id.*

him at the station, that Beck would be placed under arrest on the warrant.[39]  Counsel and Beck also know that he was wanted for questioning in Davis's disappearance.[40]

After counsel and the family left, they waited for him to be transferred to Central Lockup.[41]  Beck requested that he be allowed to speak with his father.[42]  After notifying his counsel, the officers took him to his father's business where he spoke with his father and other family members.[43]  After they returned to the station, Brazley had no further discussions with Beck.[44]  About an hour after speaking with his father, Beck told Brazley that "he had to get it off his chest, he couldn't live with it any more."[45]  At that time, Brazley read him his rights, including a discussion about counsel's advice not to make a statement, and he recorded the confession.[46]  Brazley recognized that Beck was crying and upset during the statement and most of his stay at the station.[47]  He also noted that Beck said he was tired.  Based on his statements as a whole taken in context, Brazley recalled that Beck was not tired from exhaustion and instead was "tired from guilt."[48]

Beck has not provided any support for his contention that the municipal arrest was unfounded or in anyway used to coerce him to make a statement about his involvement with Davis's

---

[39]*Id.*, pp. 8-9; St. Rec. Vol. 3 of 4, Trial Transcript, p. 11, 8/29/06.

[40]*Id.*, pp. 7, 9.

[41]*Id.*, p. 9.

[42]*Id.*, pp. 10-11; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 11-12, 8/29/06.

[43]*Id.*; St. Rec. Vol. 3 of 4, Trial Transcript, p. 12, 8/29/06.

[44]*Id.*

[45]*Id.*, p. 11; St. Rec. Vol. 3 of 4, Trial Transcript, p. 17, 8/29/06.

[46]*Id.*, p. 11.

[47]*Id.*, p. 12.

[48]*Id.*

disappearance or death.  Based on the testimony, at the time of his arrest, he was not wanted for murder, but instead only for questioning in connection with her disappearance.  Although he volunteered his presence at the police station with counsel and family, his counsel would not allow him to be questioned about Davis.  The officers proceeded with the arrest on the warrant.  The record demonstrates that Beck was allowed to speak with his counsel before and after his arrest.  He also pursued further conference with his family and was escorted by police to meet them.  He does not suggest that the officers made any threats or used other coercive tactics during the interval between his arrest and the subsequent family visit, which was acquiesced to by his counsel.  He also does not establish that Brazley or any other officer threatened him or even spoke with him at all during the time they were alone after the return to the police station.

The record instead demonstrates that Beck, wrought with his guilt, chose to confess to the strangulation and chose to do so without heeding his counsel's advice or asking for counsel's presence.  He had not been questioned at all about Davis in light of his counsel's request.  His decision to initiate the inculpatory conversation was, as determined above, an exception to the *Edwards* restrictions and acted as a knowing and voluntary waiver of counsel and the other constitutional rights he readily waived prior to the statement.  *Edwards*, 451 U.S. at 484-485; *Guidry*, 397 F.3d at 328.  He has not shown anything to support his contention that the warrant and arrest were improperly used to coerce his confession or that any other improper tactic encouraged him to confess.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  Beck is not entitled to relief on this claim.

## IX.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Ahmad Beck's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[49]

New Orleans, Louisiana, this 17th day of June, 2011.


**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[49]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.